Filed 1/20/15 Opinion following rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHANIE CRUISE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KROGER CO. et al.,<br><br>    Defendants and Appellants. | B248430<br><br>(Los Angeles County<br>Super. Ct. No. BC489042) |

APPEAL from an order of the Superior Court of Los Angeles County, Suzanne G. Bruguera, Judge. Reversed with directions.

Littler Mendelson, Jeremy A. Roth, Henry D. Lederman and Emily T. Patajo for Defendants and Appellants.

The Law Offices of Maryann P. Gallagher and Maryann P. Gallagher for Plaintiff and Respondent.

Defendants and appellants Kroger Co., Kroger Manufacturing, Compton Creamery, Keith Oldenkamp, Steve Kuebbing, Jesse Turner, Keith Henry, Jill McIntosh and Tony Ramirez (sometimes collectively referred to as Kroger or the Kroger defendants) appeal an order denying their motion to compel arbitration of an employment discrimination action filed by plaintiff and respondent Stephanie Cruise (Cruise).[1]

At the time Cruise applied for employment with Kroger in 2007, she completed an employment application which contained an arbitration clause requiring arbitration of employment-related disputes. The employment application also incorporated by reference Kroger's Mediation & Binding Arbitration Policy (Arbitration Policy or Policy).

The trial court denied Kroger's motion to compel arbitration, ruling that Kroger failed to meet its burden to prove the existence of an arbitration agreement. The trial court was not persuaded the undated four-page arbitration policy attached to Kroger's moving papers was extant at the time Cruise read and signed the employment application, and that it was the same Arbitration Policy to which the employment application referred.

We conclude the arbitration clause in the employment application, standing alone, is sufficient to establish the parties agreed to arbitrate their employment-related disputes, and that Cruise's claims against Kroger fall within the ambit of the arbitration agreement. The only impact of Kroger's inability to establish the contents of the 2007 Arbitration Policy is that Kroger failed to establish the parties agreed to govern their arbitration by procedures different from those prescribed in the California Arbitration Act (CAA) (§ 1280 et seq.). Therefore, the arbitration is to be governed by the CAA, rather than by the procedures set forth in the employer's Arbitration Policy. Accordingly, the order denying the motion to compel arbitration is reversed with directions to grant the motion.

---

[1]     An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a); *Reyes v. Macy's Inc.* (2011) 202 Cal.App.4th 1119, 1122.)

All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Events preceding litigation.*

On October 20, 2007, Cruise completed and signed an employment application for the position of Human Resources Assistant Manager at Compton Creamery & Deli Kitchen, and appeared for an interview at that location.

The employment application included the following provision, which Cruise separately initialed, and which stated in relevant part: "<u>MANDATORY FINAL & BINDING ARBITRATION:</u>  I acknowledge and understand that the Company has a Dispute Resolution Program that includes a Mediation & Binding Arbitration Policy (the 'Policy') applicable to all employees and applicants for employment . . . .  I acknowledge, *understand and agree that the Policy is incorporated into this Employment Application by this reference as though it is set forth in full*, that except for claims or disputes arising out of the terms and conditions of any applicable CBA [collective bargaining agreement] ('Excluded Disputes') the Policy applies to any employment-related disputes that exist or arise between Employees and the Company or 'Compton Creamery' (as defined in the Policy) that would constitute cognizable claims or causes of action in a court or government agency under applicable law including individual statutory claims or disputes ('Covered Disputes'), that Covered Disputes are such claims or disputes that have to do with an Employee's seeking, attempted, actual, or alleged employment with the Company or Compton Creamery (or any of them) other than Excluded Disputes, and that the Policy requires that any Employee who wishes to initiate or participate in formal proceedings to resolve any Covered Disputes must submit the claims or disputes to final and binding arbitration in accordance with the Policy.  I acknowledge, understand, and agree that (1) if any Covered Disputes exist or arise between me and the Company or Compton Creamery (or any of them), other than any Excluded Disputes, I am bound by the provisions, terms and conditions of the Policy which provides for mediation and mandatory final and binding arbitration of any Covered Disputes; (2) I am and will hereafter be deemed and treated as an 'Employee' as defined in the Policy for the purposes thereof, (3) there are no judge or jury trials of any Covered Disputes permitted

3

under the Policy, (4) I waive any right that I have or may have to a judge or jury trial of any Covered Disputes, (5) I waive any right that I have or may have to have any formal dispute resolution proceedings concerning any Covered Disputes take place in a local, state, or federal court or agency and to have such proceedings heard or presided over by an active local, state, or federal judge, judicial officer, or administrative officer, (6) all Covered Disputes must be heard, determined and resolved only by an Arbitrator through final and binding arbitration in accordance with the Policy, (7) the Company likewise agrees to mandatory final and binding arbitration of any Covered Disputes, whether initiated or participated in by me or by the Company, in accordance with the Policy, and (8) *I have received a copy of the Policy or one has been made available to me through the Company's Human Resource Manager, 2201 South Wilmington Ave., Compton, CA 90220.*" (Italics added.)

The above mentioned Arbitration Policy was not attached to the employment application and Cruise stated the Policy was not provided to her at the time she applied for employment.

On December 7, 2007, seven weeks after Cruise submitted the employment application, she was hired by Compton Creamery. On April 1, 2012, her employment was terminated.

2. *Proceedings.*

Cruise initially filed a discrimination complaint with the Department of Fair Employment & Housing, obtained a right to sue letter, and filed suit against the Kroger defendants.

The operative first amended complaint, filed August 30, 2012, alleged statutory causes of action pursuant to the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) for retaliation, sexual harassment, sexual and racial discrimination, failure to investigate and prevent harassment and retaliation, as well as common law claims for wrongful termination in violation of public policy, intentional infliction of emotional distress and defamation. The complaint also included a demand for a jury trial.

4

a. *Kroger's motion to compel arbitration.*

On November 29, 2012, the Kroger defendants filed a motion to compel arbitration and stay judicial proceedings. Kroger contended a valid agreement to arbitrate exists; Cruise was bound by the arbitration clause in the signed employment application and by Kroger's four-page Arbitration Policy; Kroger was entitled to enforce the arbitration agreement; and the arbitration agreement extended to all of Cruise's claims against Kroger.

b. *Cruise's opposition to motion to compel arbitration.*

Cruise contended, inter alia, she never signed an arbitration agreement with Kroger. The arbitration clause in the employment application was "vague," "brief" and unenforceable. As for the four-page Arbitration Policy on which Kroger also relied, that was merely an undated, unauthenticated page from a Ralphs handbook that was not provided to Cruise when she applied for the position. Cruise asserted Kroger's failure to provide her with a copy of the Arbitration Policy meant that no contract was formed with respect to the undisclosed terms. (*Metters v. Ralphs Grocery Co*. (2008) 161 Cal.App.4th 696, 702 (*Metters*).) Cruise further argued that even assuming the Arbitration Policy was properly presented to her, it was unconscionable, both procedurally and substantively.

c. *Trial court's ruling.*

On January 25, 2013, the matter came on for hearing. On April 12, 2013, the trial court denied the motion to compel arbitration and set forth its rationale in an extensive written ruling, which stated, inter alia:

"The Defendants have failed to meet their burden to prove the existence of a signed arbitration agreement. *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696.[2]

---

[2] In *Metters*, defendant Ralphs Grocery Co. moved to compel arbitration claiming the employee had entered into a binding arbitration agreement when he filled out a dispute resolution form. (161 Cal.App.4th at p. 698.) However, the dispute form failed to warn the employee that he was agreeing to binding arbitration. The dispute form, which was titled Notice of Dispute & Request for Resolution, "did not alert [the employee] he was agreeing to anything, let alone arbitration." (*Id*. at pp. 702-703.)

5

"1.  Defendants have failed to prove the existence of a written agreement to arbitrate. . . .

"2.  The defendants present Exhibit 'A' to the Snell declaration as the signed arbitration agreement.  However, Exhibit 'A' to the Snell declaration consisted merely of pages from a Ralph's employee handbook.  The Snell declaration does not state that this document was ever given to plaintiff.  Plaintiff submits a declaration in opposition stating that she never received the Ralphs employee handbook.  (See Cruise Declaration).  *There is no date on the document and the Snell declaration does not state whether that document existed in 2007.*"  (Italics added.)

The trial court further found that in any event, the Arbitration Policy submitted by Kroger was unconscionable, both procedurally and substantively.  It found procedural unconscionability on the ground Cruise was required to accept the Arbitration Policy in order to apply for employment.  It found substantive unconscionability on the grounds that (1) the Arbitration Policy limited the selection of potential arbitrators, by prohibiting the American Arbitration Association (AAA) and the Judicial Arbitration & Mediation Services (JAMS) from administering any arbitration held pursuant to the Arbitration Policy, and (2) the Arbitration Policy required each of the parties to bear half of the expense of the arbitration fees at the outset of the arbitration proceeding, contrary to *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*).

The trial court entered an order denying Kroger's motion to compel arbitration and stay the action.

This timely appeal followed.

## CONTENTIONS

Kroger contends:  the Federal Arbitration Act (FAA) governs the instant arbitration agreement; California and federal law favor arbitration; the trial court erred as

---

*Metters* concluded substantial evidence supported the trial court's finding that there was no valid arbitration agreement.  (*Id*. at p. 704.)

6

a matter of law in holding that no valid contract to arbitrate exists, in that Cruise expressed her assent to the terms of the Arbitration Policy by her initials and signature on the employment application, the Arbitration Policy was properly incorporated by reference, and Cruise is charged with knowledge of the terms of the Arbitration Policy and is deemed to have assented thereto; the trial court erred in ruling the Arbitration Policy was procedurally and substantively unconscionable; the trial court should sever any offending provisions and order arbitration; Cruise must arbitrate against all of the defendants; and the trial court proceeding should be stayed pending arbitration.

## DISCUSSION

1. *The undisputed evidence establishes the parties agreed to arbitrate their employment disputes.*

Under "both federal and state law, *the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate*." (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683, italics added.)

The instant employment application, which was signed by Cruise, contained the following provision, which Cruise separately initialed, and which stated in relevant part: "MANDATORY FINAL & BINDING ARBITRATION: *I acknowledge and understand that the Company has a Dispute Resolution Program that includes a Mediation & Binding Arbitration Policy (the 'Policy') applicable to all employees and applicants for employment . . . . I acknowledge, understand and agree that the Policy is incorporated into this Employment Application by this reference as though it is set forth in full, . . . the Policy applies to any employment-related disputes that exist or arise between Employees and the Company . . . and that the Policy requires that any Employee who wishes to initiate or participate in formal proceedings to resolve any Covered Disputes must submit the claims or disputes to final and binding arbitration in accordance with the Policy.*" (Italics added.)

The above language eliminates any argument the parties did not agree to arbitrate their employment-related disputes.

7

Further, in view of the above provision, Cruise cannot contend her claims against Kroger fall outside the scope of arbitrable issues. " 'In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute.' " (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1315.) Cruise's statutory causes of action against Kroger pursuant to FEHA (Gov. Code, § 12900 et seq.) for retaliation, sexual harassment, sexual and racial discrimination, failure to investigate and prevent harassment and retaliation, as well as her common law claims for wrongful termination in violation of public policy, intentional infliction of emotional distress and defamation, are all "employment-related disputes" within the meaning of the above arbitration clause, and therefore clearly are covered disputes subject to the arbitration agreement.

Thus, there is no question the parties agreed to arbitrate their employment-related disputes, and that Cruise's claims against Kroger fall within the ambit of the arbitration agreement. Therefore, Kroger is entitled to enforce the agreement to arbitrate.

2. *No merit to Cruise's contention the arbitration agreement lacked mutuality because it only required the employee to submit to arbitration.*

Cruise's contention that the employment application only subjected the applicant/employee to arbitration is meritless. The arbitration provision in the employment application stated in pertinent part: "(7) the Company likewise agrees to mandatory final and binding arbitration of any Covered Disputes, whether initiated or participated in by me or by the Company, in accordance with the Policy." This language disposes of Cruise's assertion that Kroger did not waive its right to a jury trial.

Further, the fact that only Cruise manually signed the employment application is of no moment. In *Lara v. Onsite Health, Inc*. (N.D. Cal. 2012) 896 F.Supp.2d 831 (*Lara*), the employee contended the arbitration agreement lacked mutuality because the employer did not sign it. In response, the employer argued its intent to be bound was evidenced by the fact that the arbitration agreement was printed on its company letterhead. (*Id*. at p. 844.)

8

The *Lara* court concluded the employer intended to be bound by the agreement and that its letterhead was intended to authenticate the agreement. (*Lara, supra*, 896 F.Supp.2d at p. 844.) It explained: "The signature of a party to be bound by a contract 'need not be manually affixed, but may in some cases be printed, stamped or typewritten.' *Marks v. Walter G. McCarty Corp.*, 33 Cal.2d 814, 820 (1949) (citations omitted). However, if there is no manual signature, it must still be shown 'that the name relied upon as a signature was placed on the document or adopted by the party to be charged with the intention of authenticating the writing. In other words the defendant must intend to appropriate the name as a signature.' *Id.*; see also *Donovan v. RRL Corp.*, 26 Cal.4th 261, 277 (2001) (The appearance of the defendant's name in an advertisement constituted an offer; therefore, the defendant's intent to authenticate his or her name as a signature can be established from the face of the advertisement)." (*Lara, supra,* 896 F.Supp.2d at p. 844.)

*Lara* found the employer "intended to be bound by the Arbitration Agreement. First, [the employer's] intent is evidenced by the fact that the Agreement is printed on its company letterhead and, because [the employer] submitted its offer of employment in this manner, the Court finds that [the employer] intended to authenticate its name as a signature. . . . Second, [the employer's] intent to be bound is further evidenced by the fact that it presented the Agreement to [the employee] as part of its New Hire packet, with a letter explaining that [the employee] must complete and sign all documents to be processed. . . . Third, the Agreement itself binds both parties to arbitration, repeatedly referring to 'you and Onsite Health, Inc.,' or 'you and the Company.' . . . This language establishes that both parties are bound to arbitrate any disputes, with the exception of injunctive relief. Thus, the Agreement is written in terms of both parties' obligations and evidences [the employer's] intent to be bound. See *Armendariz*, 24 Cal.4th at 117-118 (recognizing the 'modicum of bilaterality' required in an arbitration agreement)." (*Lara, supra,* 896 F.Supp.2d at p. 844.)

Here, we readily conclude Kroger intended to be bound by the arbitration clause in its employment application. Kroger's intent is evidenced by the fact that the employment

9

application was printed on its company letterhead and the arbitration clause declared Kroger's intent to be bound by thereby ["(7) the Company likewise agrees to mandatory final and binding arbitration of any Covered Disputes"]. Under these circumstances, we conclude Kroger intended to intended to authenticate its name as a signature, so as to bind both parties to arbitration.

3. *The impact of the trial court's finding that Kroger failed to establish the precise terms of the Arbitration Policy.*

Kroger's moving papers were supported by the declaration of Savarda Kia Snell, Human Resource Manager for Compton Creamery. The Snell declaration, dated November 28, 2012, provided in relevant part at paragraph 3: "Attached hereto as Exhibit A is a true and correct copy of the Mediation & Binding Arbitration Policy (referred to in Defendants' Memorandum of Points and Authorities as the 'Arbitration Policy')." Exhibit A to the Snell declaration consisted of a four-page document captioned "RALPHS GROCERY COMPANY [¶] DISPUTE RESOLUTION PROGRAM [¶] MEDIATION & BINDING ARBITRATION POLICY." Kroger asserted said document was a copy of the operative Arbitration Policy which was incorporated by reference into the employment application which Cruise executed five years earlier, on October 20, 2007.

However, the trial court was not persuaded the undated four-page arbitration policy attached to the Snell declaration was extant at the time Cruise read and signed the employment application, and that it was the same Arbitration Policy to which the employment application referred.

*Nonetheless,* Kroger's inability to establish the precise language of the Arbitration Policy which was in effect at the time of Cruise's hiring in 2007, does not support the trial court's conclusion that Kroger "failed to prove the existence of a written agreement to arbitrate." The undisputed evidence, specifically, the employment application, is sufficient to establish the existence of a written agreement to arbitrate the employment-related disputes pled herein by Cruise. Therefore, Kroger's inability to establish the

10

precise terms of the Arbitration Policy does not relieve Cruise of the obligation to arbitrate.

The only impact of Kroger's inability to establish the contents of the 2007 Arbitration Policy is that Kroger failed to establish that the parties agreed to govern their arbitration by procedures different from those prescribed in the CAA (§ 1280 et seq.). Unless the parties otherwise agree, the conduct of an arbitration proceeding is controlled by the CAA. (See, e.g., §§ 1281.6, 1282, 1282.2.) Here, because Kroger failed to establish an agreement to the contrary, the instant arbitration proceeding is to be governed by the procedures set forth in the CAA. Because this arbitration is controlled by California statutory and case law, Cruise's arguments that Kroger's Arbitration Policy is unconscionable, both procedurally and substantively, are meritless.[3]

Nothing herein should be construed as enabling an employer to enforce a missing arbitration agreement. Here, the movant employer successfully established the *existence* of an agreement to arbitrate, based on the language of the arbitration clause contained in the employment application; however, the employer failed to establish the contents of the purported four-page Arbitration Policy setting forth the procedures which would govern the arbitration. The language of the arbitration clause in the instant employment application, standing alone, was sufficient to establish the *existence* of an agreement by the parties to arbitrate employment-related disputes. While the parties' agreement to arbitrate is enforceable, the employer's inability to establish the contents of its

---

[3] A "compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis." (*Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1122-1123.) With respect to appointment of the arbitrator, section 1281.6 provides that where the parties' arbitration agreement fails to provide a method of appointing an arbitrator, the method prescribed in section 1281.6 shall control. (See *HM DG, Inc. v. Amini* (2013) 219 Cal.App.4th 1100, 1107 [parties need not agree upon a specific method for appointing an arbitrator to form a binding arbitration agreement].) Finally, with respect to apportionment of costs, *Armendariz* held "a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA claims impliedly obliges *the employer* to pay all types of costs that are unique to arbitration." (24 Cal.4th at p. 113, italics added.)

11

Arbitration Policy precludes the employer from enforcing the provisions of said policy. Instead, the arbitration proceeding is to be conducted in accordance with the procedures set forth in the CAA as well as applicable case law.

In concluding the arbitration proceeding is to be governed by the procedures set forth in the CAA, this court is not rewriting the arbitration agreement or severing any objectionable provisions in the four-page Arbitration Policy in order to save the arbitration agreement. (*Armendariz, supra*, 24 Cal.4th at p. 122 [trial court has "some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement"].) The applicability of the CAA's procedures is the product of Kroger's inability to establish the contents of the purported four-page Arbitration Policy. Because Kroger failed to establish an agreement binding the parties to alternative procedures, the instant arbitration proceeding is to be governed by the procedures set forth in the CAA.

## DISPOSITION

The order denying the motion to compel arbitration and stay the action is reversed with directions to grant the motion.  The parties shall bear their respective costs on appeal.

**CERTIFIED FOR PUBLICATION**


ALDRICH, J.

We concur:



KITCHING, Acting P. J.



KLEIN, J.[*]

---

[*]    Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.