Filed 9/2/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| JEROME OSWALD, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MURRAY PLUMBING AND HEATING CORPORATION, <br><br> Defendant and Appellant. | B312736 <br><br> (Los Angeles County Super. Ct. No. 20CMCV00328) |

APPEAL from an order of the Superior Court of Los Angeles County, Kristin S. Escalante, Judge.  Reversed with directions.

Atkinson, Andelson, Loya, Ruud & Romo, Ronald W. Novotny and Joshua N. Lange for Defendant and Appellant.

Justice Law Corporation, Douglas Han, Shunt Tatavos-Gharajeh and Talia Lux for Plaintiff and Respondent.

_____

This appeal concerns an arbitration clause in a construction industry collective bargaining agreement (CBA). The issue is whether the CBA bars a Private Attorneys General Act (PAGA) lawsuit. (Lab. Code, § 2698 et seq.)[1] PAGA allows employees—once they exhaust administrative procedures—to seek civil penalties for Labor Code violations, on behalf of the state. (§§ 2699, subd. (a), 2699.3, 2699.5.)

The right to file a PAGA action generally cannot be waived by contract. However, the Labor Code exempts construction workers from PAGA if a CBA covers wages, hours and working conditions and (1) has a grievance and arbitration procedure to redress Labor Code violations; (2) clearly waives PAGA; and (3) authorizes the arbitrator to award all remedies available under the Labor Code. (§ 2699.6, subd. (a).)

The parties' CBA clearly waives PAGA and satisfies the requirements of section 2699.6, as a matter of law. Their dispute is exempt from PAGA. We reverse the trial court's order denying the employer's motion to compel arbitration and direct the court to enter an order granting the motion.

## FACTS AND PROCEDURAL HISTORY

Appellant Murray Plumbing and Heating Corporation (Murray) briefly employed respondent Jerome Oswald as a journeyman pipefitter in 2019–2020. In 2020, Oswald sued for civil penalties under PAGA. He alleges that Murray did not provide meal and rest breaks or accurate wage statements; pay all wages in a timely manner; or reimburse business expenses.

The parties' employment relationship is governed by a Master Agreement (Agreement) between Oswald's union and Murray's contractor association, effective from 2017 to 2026. The Agreement is a CBA requiring arbitration of disputes—including ones arising under PAGA—as the sole and exclusive remedy. Murray invoked the Agreement and moved to compel arbitration, which Oswald opposed. The trial court found section 2699.6 does not apply and denied Murray's motion on February 16, 2021.

---

[1] Undesignated statutory references are to the Labor Code.

On April 8, 2021, three days after Murray appealed the court's ruling, the parties' collective bargaining representatives signed a "Memorandum of Understanding Waiver of PAGA and Class Action Claims" (MOU). The MOU replaces the CBA's original arbitration clause and is retroactive to 2017.

On April 13, 2021, Murray's counsel Ronald Novotny e-mailed Oswald's attorneys Douglas Han and Shunt Tatavos-Gharajeh, asking them to "immediately dismiss" Oswald's PAGA action in light of the MOU. All the attorneys then behaved as if nothing had occurred and briefed the appeal without mentioning the MOU. In reliance on the briefs, this court prepared a bench memorandum analyzing the CBA's original arbitration clause.

Shortly before oral argument, Attorney Novotny notified this court about the MOU. Oswald's attorneys oppose the belated revelation of the MOU: They blame Novotny, though they too have known about the MOU for 16 months.

## DISCUSSION

### 1. Admission of New Evidence

A reviewing court may take additional evidence "in the interests of justice." (Code Civ. Proc., § 909.) This enables appellate courts, in appropriate cases, to terminate litigation "if it appears that on no reasonable theory could respondent make a further showing in the trial court." (*People v. Benford* (1959) 53 Cal.2d 1, 6.) The statute states that it " 'shall be liberally construed' " to allow cases to " 'be finally disposed of by a single appeal and without further proceedings in the trial court.' " (*Duncan v. Peterson* (1970) 3 Cal.App.3d 607, 612.) Courts are "more open to admitting evidence that involved events which occurred after the judgment was entered." (*In re Elise K.* (1982) 33 Cal.3d 138, 150.)

We shall allow new evidence of the MOU in the interests of justice. (Code Civ. Proc., § 909.) All counsel wasted judicial resources by failing to immediately disclose the MOU to this court. They briefed a superseded arbitration clause and encouraged this court to prepare an unnecessary analysis, despite knowing about the MOU for 16

months. We cannot allow this gamesmanship to go unaddressed. It reflects poorly on all the lawyers involved in this case.

## 2. Policy Favoring Arbitration

Public policy favors contractual arbitration " ' "as a speedy and relatively inexpensive means of dispute resolution." ' " (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 830.) Courts enforce arbitration agreements if "a party to the agreement refuses to arbitrate [a] controversy." (Code Civ. Proc., § 1281.2.) It is undisputed that the parties' relationship is governed by the Agreement, which has an arbitration clause.

Arbitration provisions in a CBA are enforceable with respect to claims made by a union member. (*14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247, 260; *Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 180.) "[W]hether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 649.)

## 3. PAGA Civil Actions

PAGA allows employees, acting on behalf of the state, to bring civil actions to redress Labor Code violations. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.) "Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 622; *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665, 677–680 [PAGA claim is not subject to arbitration, absent state consent].)

As a rule, "an employee's right to bring a PAGA action is unwaivable." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383, overruled in part in *Viking River Cruises, Inc. v. Moriana* (2022) ___ U.S. ___ [142 S.Ct. 1906, 2022 U.S. Lexis 2940].) As a result, employment agreements waiving an employee's right to assert a PAGA claim in a judicial forum are unenforceable. (*Julian v.*

4

*Glenair, Inc.* (2017) 17 Cal.App.5th 853, 869–871 [an employee who signs such an agreement "is not then authorized to waive the state's right to a judicial forum"].) "[W]hile a PAGA action might be subject to arbitration, relying on a predispute agreement with a private party will not suffice to compel arbitration of a PAGA claim." (*Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 446.)

In 2018, the Legislature carved out an exception to the rule prohibiting contractual waivers of PAGA suits by enacting a PAGA statute that applies to the construction industry.[2] Section 2699.6 precludes "a civil action under Section 2699" if certain requirements are met. (§2699.6, subd. (b).) We must determine if section 2699.6 applies to the parties' CBA.

### 4. Section 2699.6 Applies Here

### a. The MOU is retroactive

The MOU states that it "shall apply to any representative PAGA claims and class action claims **that arise or are pending** during the term of the parties' 2017-2026 Master Agreement **regardless of when**

---

[2] The statute, effective January 1, 2019, provides that the right to bring a civil action under PAGA "shall not apply to an employee in the construction industry with respect to work performed under a valid collective bargaining agreement . . . that expressly provides for the wages, hours of work, and working conditions of employees, premium wage rates for all overtime hours worked, and for the employee to receive a regular hourly pay rate of not less than 30 percent more than the state minimum wage rate, and the agreement does all of the following:

"(1) Prohibits all of the violations of this code that would be redressable pursuant to this part, and provides for a grievance and binding arbitration procedure to redress those violations.

"(2) Expressly waives the requirements of this part in clear and unambiguous terms.

"(3) Authorizes the arbitrator to award any and all remedies otherwise available under this code, provided that nothing in this section authorizes the award of penalties under this part that would be payable to the Labor and Workforce Development Agency." (§ 2699.6, subd. (a).)

**they were filed with any court** or administrative agency." (Boldface added.) Thus, the MOU is retroactive to 2017. Oswald's claims arose in 2019–2020, during the term of Agreement.

Oswald does not question the legitimacy of the MOU but argues that it does not apply to him personally because it was signed after his employment ended, while his lawsuit was pending. We disagree. The MOU applies here.

Oswald relies on cases involving individuals who signed arbitration agreements. Unlike the cited cases, Oswald is not a signatory to the Agreement or MOU. Instead, a union negotiated and signed them, on Oswald's behalf. As a union member, Oswald enjoys the benefits of the union's bargaining power but he is also subject to the burdens imposed by the CBA, which limit his remedy for Labor Code violations to an arbitral forum. (See *Florio v. City of Ontario* (2005) 130 Cal.App.4th 1462, 1466 [" 'a member of a bargaining unit is bound by the terms of a valid collective bargaining agreement' "].) Oswald cites no limitation, restriction or qualifying language in the Agreement preventing his union from signing a MOU that is retroactive to 2017 and incorporates section 2699.6. The union's agreement to make the MOU retroactive affects Oswald's pending claims.

A contracting party may agree to an arbitration clause that applies retroactively to a pending lawsuit, affecting claims that arose while the plaintiff worked for the defendant but before the arbitration clause was signed, if the clause explicitly applies to all claims relating to the employment. (*Franco v. Graystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 228–230; *Salgado v. Carrows Restaurants, Inc.* (2019) 33 Cal.App.5th 356, 358–362 [arbitration agreement signed during litigation applied to any claim, dispute, or controversy, with no limitation placed on the age of the claim, which unequivocally required arbitration of an employee's pending lawsuit].) The same reasoning applies here, where the contracting party (Oswald's union) agreed to retroactively modify and clarify an existing arbitration clause.

It bears noting that before the parties brought the MOU to our attention, shortly before oral argument, this court analyzed the

Agreement without the MOU.  We concluded that the original arbitration provisions satisfied section 2699.6 and barred Oswald's civil suit.  The clear terms of the MOU, modeled on the language of section 2699.6, reinforce our conclusion.

### b.  The elements of section 2699.6 are satisfied

Oswald worked in construction under a CBA that covers wages, hours and conditions.  His hourly rate of $50 was 400 percent more than the state minimum wage of $12.  He was entitled to premium overtime wage rates.  The first paragraph of section 2699.6, subdivision (a) is satisfied.

The right to bring a PAGA civil action does not apply to an employee in the construction industry performing work under a CBA that "[p]rohibits all of the violations of this code that would be redressable pursuant to this part, and provides for a grievance and binding arbitration procedure to redress those violations."  (§ 2699.6, subd. (a)(1).)

The Agreement, as amended and clarified by the MOU, satisfies this element on its face.  It reads, "The parties . . . agree that the 2017-2026 Master Agreement prohibits any and all violations of the California Labor Code sections identified in Labor Code §§ 2699.5 and 2699(f) as well as any others that would be redressable by PAGA, and that such claims shall be resolved exclusively through the Grievance-Arbitration procedure contained in this Memorandum of Agreement and shall not be brought in a court of law or before any administrative agency such as the California Labor Commissioner."  The Agreement—both before and after the MOU—encompasses violations of more than 150 statutes listed in PAGA section 2699.5.  All the violations alleged in Oswald's complaint are listed in section 2699.5.[3]

---

[3] The complaint alleges wage violations (§§ 510, 1194, 1197, 1198); meal and rest break violations (§§ 226.7, 512); untimely wage payment (§§ 201–204); wage statement violations (§§ 226, 1174); and business expense violations (§§ 2800, 2802).  These statutes are all listed in section 2699.5.

Next, section 2699.6 requires that a CBA "[e]xpressly waive[] the requirements of this part in clear and unambiguous terms." (§ 2699.6, subd. (a)(2).)  The Agreement, as amended and clarified by the MOU, satisfies this element.  It reads, "Pursuant to California Labor Code Section 2699.6, the Parties hereby expressly and unambiguously waive the provisions of the California Private Attorneys General Act (PAGA), Labor Code Section 2698, *et seq.*, and agree that none of the provisions of that statute apply to any of the employees covered by the 2017-2026 Master Agreement."

Finally, the CBA must "[a]uthorize[] the arbitrator to award any and all remedies otherwise available under this code, provided that nothing in this section authorizes the award of penalties under this part that would be payable to the Labor and Workforce Development Agency." (§ 2699.6, subd. (a)(3).)

The Agreement, as amended and clarified by the MOU, satisfies this third element.  Echoing the statutory language, the MOU reads, "An arbitrator presiding over an arbitration conducted pursuant to the Grievance/Arbitration Procedure shall have the authority to make an award of any and all remedies otherwise available under the California Labor Code, except for an award of penalties that would be payable to the Labor and Workforce Development Agency."

### 5.  Enforcing the Agreement Satisfies the Purpose of Section 2669.6

"PAGA does not create any new substantive rights or legal obligations, but 'is simply a procedural statute allowing an aggrieved employee to recover civil penalties—for Labor Code violations—that otherwise would be sought by state labor law enforcement agencies.' (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)" (*Julian v. Glenair, Inc., supra,* 17 Cal.App.5th at p. 871.)

By enacting section 2669.6, the Legislature eliminated the need for state consent to or involvement in an agreement to arbitrate claims that would otherwise be subject to a civil action under PAGA, if the

8

parties' employment relationship is governed by a qualifying construction industry CBA.

Section 2669.6 is intended to " 'commit PAGA claims arising in the building and construction industry to the grievance and arbitration machinery of a collective bargaining agreement ("CBA") maintained by employers and [a] union in that industry so long as the CBA expressly provides for' key provisions such as a grievance and binding arbitration procedure." (Assembly Com. on Labor and Employment, Analysis of Assem. Bill No. 1654 (2017–2018 Reg. Sess.) as amended Aug. 24, 2018, p. 2.) It allays " 'significant legal abuse' " that PAGA encourages by allowing " 'class action type lawsuits over minor employment issues.' " (*Ibid.*) The Assembly Committee cited the carpenters' union sponsoring the legislation, which said PAGA undermines CBAs offering workplace protections with well-developed, effective and fair grievance/arbitration dispute resolution procedures. (*Ibid.*)

Moreover, " 'This would not be forced arbitration imposed by employers on individual, unrepresented workers but a mutually agreed upon alternative to costly and time-consuming litigation in which the union would be able to represent all its members and a mutually agreed upon arbitrator could award full relief to all workers' " to " 'free up court resources to deal with claims by workers who lack union representation.' " (Sen. Judicial Com., Analysis of Assem. Bill No. 1654 (2017–2018 Reg. Sess.) as amended June 18, 2018, p. 5.)

The Agreement, as modified by the MOU, meets the requirements of section 2699.6. The negotiated terms of the Agreement protect the interests of all union employees covered by it. Oswald must arbitrate his claims through the procedures specified in the Agreement.[4]

---

[4] In light of our conclusion, we do not discuss *Viking River Cruises, Inc. v. Moriana, supra,* ___ U.S. ___ [142 S.Ct. 1906, 2022 U.S. Lexis 2940]*,* which does not involve a CBA or discuss section 2699.6.

**DISPOSITION**

The order denying the motion to compel arbitration is reversed. The matter is remanded with directions to enter an order directing the parties to arbitrate their dispute pursuant to their collective bargaining agreement. The parties to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

10